IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JENNIFER HOSTETTER, Individually and as Administratrix of the Estate of Larry Hostetter, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 7:17-cv-00006-O-BP |
| ROBERT GILLOCK, Individually, and CITY OF NOCONA, TEXAS, | § § § § | |
| Defendants. | § § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are Defendant Robert Gillock's 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 30) and Brief in Support (ECF No. 31), both filed March 22, 2017; Defendant the City of Nocona's 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 33) and Brief in Support (ECF No. 34), both filed March 22, 2017; Plaintiff's Response to Defendant Robert Gillock's Motion to Dismiss for Failure to State a Claim (ECF No. 42), filed April 12, 2017; Defendant Gillock's Amended Reply to Plaintiff's Response (ECF No. 46), filed April 13, 2017; Plaintiff's Response to Defendant the City of Nocona's Motion to Dismiss for Failure to State a Claim (ECF No. 47), filed April 26, 2017; and Defendant the City of Nocona's Reply to Plaintiff's Response (ECF No. 48), filed April 27, 2017.

Based upon a full review of the relevant pleadings on file and applicable legal authorities, the undersigned RECOMMENDS that Judge O'Connor DENY Defendant Gillock's Motion to Dismiss (ECF No. 30), GRANT in part and DENY in part Defendant the City of Nocona's Motion

to Dismiss (ECF No. 33), and DISMISS with prejudice Plaintiff's claims against the City of Nocona.

## I. BACKGROUND

Plaintiff Jennifer Hostetter, individually and as administratrix of the Estate of Larry Hostetter ("Hostetter"), brought suit against Defendants Robert Gillock ("Gillock") and the City of Nocona, Texas ("City of Nocona") under 42 U.S.C. § 1983 and Tex. Civ. Prac. & Rem. Code § 71.002. ECF No. 28. Hostetter alleges that Gillock used excessive force against Larry Hostetter ("Decedent") and that the City of Nocona is liable as a municipality. *Id.* at 1. The facts, as recounted in Hostetter's Amended Complaint and taken as true and viewed in the light most favorable to Hostetter at this stage of the litigation, as required by *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992), are as follows.

At the time of the events giving rise to the instant case, Gillock was a reserve officer for the Nocona Police Department. *Id.* at 3. From the years 2012-2015, Gillock was a reserve peace officer with four different police departments in the State of Texas. *Id.* at 7. Gillock served as a reserve peace officer for the Nocona Police Department on five separate occasions for a span of less than four months each time, and was terminated on at least two of those occasions. *Id.* As a reserve officer for the Rhome Police Department, Gillock "would routinely stop drivers for no apparent reason or search vehicles without probable cause." *Id.* Hostetter contends that the City of Nocona did not contact Gillock's prior employers regarding his fitness to serve as an officer. *Id.*

On February 9, 2015, Gillock responded to a call for assistance at the home of the Decedent, who was a deputy with the Montague County Sherriff's Department, and his wife, Hostetter. *Id.* at 3. The dispatcher informed Gillock that the dispute was domestic and the Decedent may be intoxicated. *Id.* at 4. Upon arrival at the Hostetters' home, Gillock told Hostetter and the

Decedent "that there would not be any record of this incident and intentionally turned off his body microphone." *Id.* Thirty minutes after turning off his microphone, Gillock ordered Hostetter and her daughter to leave the residence, thus leaving Decedent and his three young sons in the house with Gillock. *Id.* A few minutes after Hostetter left, backup officers arrived but were told by Gillock to remain outside of the residence. *Id.* at 5. While outside, the first backup officer to respond heard four gunshots from within the residence and entered the house along with other responding officers who arrived momentarily. *Id.* Upon entering the house, the responding officers found Gillock standing in front of the Decedent, who was sitting in a recliner and unconscious. *Id.* Decedent appeared to have been shot several times—at least once in the arm and twice in the chest. *Id.* Decedent had a pistol in his back pocket underneath his body. *Id.* Paramedics transported Decedent to the hospital where he was pronounced dead. *Id.* His death was ruled a homicide. *Id.*

After Decedent's death, the Montague County District Attorney's Office, assisted by the Montague County Sheriff's Office, the Wichita County Sheriff's Office, and the Nocona Police Department, launched a criminal investigation which was ultimately turned over to the Texas Rangers. *Id.* Chris Hughes, an investigator with the Montague County Sheriff's Office, and Chris Hamilton, an investigator with the Montague County District Attorney's Office, asked Hostetter for the password for her computer, which contained surveillance video from the security cameras monitoring the entrance of her and the Decedent's home. *Id.* at 5-6. Hostetter complied, but returned home to find that the camera pointing at the door now faced downward, that the streaming video held on her computer was entirely removed, and that no copy of the video remained. *Id.* at 6. Hostetter repeatedly requested that items seized from her home be returned to her and that she be provided with copies of any police reports, witness statements, or other documents related to the case. *Id.* However, no items have been released to her because the investigation is ongoing. *Id.*

The Montague County District Attorney ultimately presented a homicide case against Gillock based on the Decedent's death to the Montague County Grand Jury, but the Grand Jury chose to take no action at the time. *Id.* In April 2015, the Nocona Police Department fired Gillock. *Id.* at 8.

After Defendants initially filed motions to dismiss Hostetter's Original Complaint, the Court granted Hostetter's Unopposed Motion for Leave to Amend and denied Defendants' previous motions to dismiss as moot. ECF Nos. 27, 29, 41. Thereafter, Gillock filed a Motion to Dismiss Hostetter's Amended Complaint on the grounds that Hostetter failed to adequately state a claim for a deprivation of civil rights under 42 U.S.C. § 1983, that Gillock is entitled to qualified immunity for his actions as a police officer, and that Hostetter failed to join necessary parties to her wrongful death claim against Gillock. ECF No. 30. The City of Nocona also filed a Motion to Dismiss Hostetter's Amended Complaint, asserting that Hostetter failed to adequately state a claim for municipal liability and that Hostetter failed to join necessary parties to her wrongful death claim, although the wrongful death claim was only alleged against Gillock. ECF No. 33. Hostetter filed responses to each Defendant's Motion, and Defendants subsequently filed replies. ECF Nos. 42, 46, 47, 48.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Rules require that each claim contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). Accordingly, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take

all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Bell Atl. Corp.*, 550 U.S. at 547). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

"Normally, in deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint. However, courts may also consider matters of which they may take judicial notice." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996). Therefore, in ruling on a motion to dismiss, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

With particular respect to motions to dismiss section 1983 claims against public officials, the Court must not accept conclusory allegations or unwarranted deductions of fact as true because the Fifth Circuit's heightened pleading standard requires "claims of specific conduct and actions giving rise to a constitutional violation." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Thus,

the issue now before the Court "is not whether a plaintiff will ultimately prevail but whether [s]he is entitled to offer evidence to support [her] claims." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996)).

### B. 42 U.S.C. § 1983

"Section 1983 provides a claim against anyone who 'under color of any statute, ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied,* ___ U.S. ___, 134 S. Ct. 1935 (2014). "To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)).

### i. Excessive Force

To state a claim for excessive force against a police officer, a plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (citations omitted). "An officer's use of deadly force is presumptively reasonable when the officer has reason to believe that the suspect poses a threat of serious harm to the officer or to others." *Id.* (citing *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)). In conducting the "reasonableness" inquiry, the court must judge the reasonableness of the deadly force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989). This inquiry "requires careful attention to the facts and circumstances of each particular case, including (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat

to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Excessive force claims are [thus] necessarily fact-intensive . . . [and] depend[ ] on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Graham*, 490 U.S. at 396) (citing *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)).

### ii. Municipality Liability

"A municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). Therefore, establishing "[m]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Monell*, 436 U.S. at 694). "Accordingly, 'isolated unconstitutional actions by municipal employees will almost never trigger liability,' [instead,] 'the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur.'" *Id.* (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

Under the *Monell* theory of liability, a policymaker is a person who has "the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988). The Fifth Circuit distinguishes between "final decisionmaking authority and final policymaking authority" for purposes of establishing municipal liability. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citing *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993)). "Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action

ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). "Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law." *Valle*, 613 F.3d at 542 (citing *Pembaur*, 475 U.S. at 482).

"The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* (citing *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a single decision by a policy maker may warrant municipal liability, "this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citing *Bolton v. City of Dallas*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005))).

Finally, to establish "moving force" causation, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). This requires that a plaintiff "demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* at 411. "Deliberate indifference is a high standard—'a showing of simple or even heightened negligence will not suffice.'" *Valle*, 613 F.3d at 542 (citing *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407)).

"The standard applicable to a failure-to-train claim is the same as the standard for municipal liability." *Id.* at 544 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009) (citations omitted). "To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that

8

the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010) (citing *World Wide Street Preachers Fellowship*, 591 F.3d at 756).

### C. Qualified Immunity

"Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability." *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

> Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.' *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.' *Id.*

*Thompson v. Upshur Cty., TX*, 245 F.3d 447, 456 (5th Cir. 2001) (citing *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)).

"Qualified immunity 'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). A court "will not deny immunity unless 'existing precedent . . . placed the statutory or constitutional question beyond debate[.]'" *Whitley*, 726 F.3d at 638 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To overcome the defense of qualified immunity, a plaintiff must show that "(1) that the

9

official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 741 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' [such] that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III. ANALYSIS

### A. Claims against Gillock

#### i. Hostetter Sufficiently Alleged a Claim under 42 U.S.C. § 1983

In his Motion to Dismiss, Gillock argues that Hostetter has not "pleaded a use of force that was unreasonable and unnecessary under the circumstances because no circumstances are presented in the Complaint." ECF No. 31 at 4. Considering the facts alleged, it does not appear that Hostetter can prove *no* set of facts in support of her claim that would entitle her to relief. *See Kaiser Aluminum & Chem. Sales*, 677 F.2d at 1050 (citing *Conley*, 355 U.S. at 45-46). Gillock's Motion is premised on Hostetter's purported failure to allege any set of circumstances in support of her claims. However, as described above, Hostetter has alleged that Gillock (1) responded to a call for a domestic disturbance at Decedent's home, (2) remained in the home for 30 minutes before ordering Hostetter and one of her four children to leave the home, (3) instructed responding backup officers to not enter the home, and (4) shot and killed Decedent by shooting him four times as Decedent sat in his recliner, posing no immediate threat to Gillock or the three children who remained in the home. ECF No. 28 at 4-5.

10

Hostetter has sufficiently stated a claim for excessive force against Gillock—namely, that Gillock used deadly force, causing the death of Decedent, even though Decedent did not present an immediate threat to the safety of Gillock or others. *See Ontiveros*, 564 F. 3d at 379 (plaintiff must demonstrate "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."). Although Gillock offers an alternative version of the facts, particularly asserting that Decedent pulled a handgun and threatened Gillock such that Gillock shot Decedent in self-defense, "merely offering a different version of the facts is insufficient to prevail on a Rule 12(b)(6) motion . . . [because] the court must accept all well-pleaded facts [as] true and draw all reasonable inferences in [Hostetter's] favor." *Arevalo v. City of Farmers Branch, Tex.*, No. 3:16-CV-1540-D, 2017 WL 1153230, at *7 (N.D. Tex. Mar. 28, 2017).

### ii. Gillock is Not Entitled to Qualified Immunity at this Stage

Finding that Hostetter has sufficiently stated an excessive force claim, the undersigned now must consider whether Gillock is entitled to qualified immunity at this stage. To overcome the defense of qualified immunity, Hostetter must show "(1) that [Gillock] violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 741 (citing *Harlow*, 457 U.S. at 818). "The underlying constitutional violation [Hostetter alleges] here is excessive force, specifically excessive use of deadly force. Therefore, the relevant question is whether a reasonable officer could have believed that the use of deadly force by [Gillock] under the circumstances was reasonable in light of the clearly established law." *Cole v. Hunter*, 68 F. Supp. 3d 628, 642 (N.D. Tex. 2014).

"[I]t is clearly established that an officer using deadly force when a suspect does not pose a sufficient threat of harm, or immediate danger to the officer or to others, would have had

11

reasonable warning that the use of deadly force violated the suspect's constitutional rights." *Cole*, 68 F. Supp. 3d at 643 (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failure to apprehend the suspect does not justify the use of deadly force to do so.")); *Reyes v. Bridgwater*, 362 F. App'x. 403, 409 (5th Cir. 2010) ("The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others.")). Therefore, on February 9, 2015, the date of the shooting, "the law was clearly established, such that [Gillock] would know that use of deadly force under the circumstances alleged by [Hostetter] violated [Decedent's] Fourth Amendment rights." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 200 (2004)).

The undersigned must now determine whether the pleadings, viewed in the light most favorable to Hostetter, show that Gillock's use of deadly force was unreasonable. Gillock asserts that Decedent "pulled a handgun from his pocket in a threatening manner[,]" in direct contrast to Hostetter's assertion that "Decedent could not have brandished his gun" at Gillock. ECF No. 28 at 10; ECF No. 32 at 7. These opposing descriptions of the events at issue present a factual dispute that cannot be resolved at this stage. *Cole*, 68 F. Supp. 3d. at 644-45; *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) ("The legally relevant factors bearing upon the [*Saucier*] question will be different on summary judgment than on an earlier motion to dismiss. At the motion to dismiss stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'") (internal quotations and citations omitted).

"[T]he Fifth Circuit requires the suspect display a threatening '*Manis* act' before it is objectively reasonable to use deadly force." *Id.* at 645 (citing *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009)). Viewing the facts in the light most favorable to Hostetter, Decedent "never made a threatening or provocative gesture toward [Gillock,]" and it was thus not objectively reasonable

for Gillock to use deadly force. *Id.* at 645-46. As did the court in *Schaefer*, the undersigned finds that "[d]rawing all reasonable inferences in [Hostetter's] favor, it is facially plausible [that] the threat of physical harm was not immediate because [Decedent] did not actually draw the weapon and point it in Officer [Gillock's] direction." *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 716-17 (W.D. Tex. 2015) ("Considering the competing accounts of what occurred, and because excessive force cases such as this are exceedingly fact intensive, the issue of whether [the Officer] violated [plaintiff's] Fourth Amendment rights is not appropriate for adjudication on a motion to dismiss."). Because Hostetter has sufficiently alleged that Gillock's use of deadly force was objectively unreasonable under clearly established law, Gillock is not entitled to qualified immunity at this time. For the foregoing reasons, the undersigned RECOMMENDS that Gillock's Motion to Dismiss (ECF No. 31) be DENIED.

### iii. Tex. Civ. Prac. & Rem. Code § 71.002

Although Hostetter asserted a wrongful death claim only against Gillock, both the City of Nocona and Gillock sought dismissal of the claim based on failure to join Decedent's parents and children as necessary parties. *See* ECF No. 28 at 12; ECF No. 31 at 8; ECF No. 34 at 10. Texas law provides that "[i]f none of the individuals entitled to bring a [wrongful death] action have begun the action within three calendar months after the death of the injured individual, his executor or administrator shall bring and prosecute the action unless requested not to by all those individuals." Tex. Civ. Prac. & Rem. Code § 71.004(c). Decedent died February 9, 2015. ECF No. 28 at 1. Hostetter filed this lawsuit on January 19, 2017. ECF No. 1. Thus, Hostetter, as the administratrix of the Estate of Larry Hostetter, is entitled to pursue the wrongful death claim for the benefit of all. *See Evans v. City of Dallas*, No. 3:16-CV-0561-L, 2017 WL 958607, at *7 (N.D. Tex. Mar. 13, 2017); *Coffey v. Ochiltree Cty.*, No. 2:16-CV-00071-J, 2016 WL 5349792, at *2

13

(N.D. Tex. Sept. 22, 2016) (collecting cases) ("Any one person who is qualified to bring a wrongful death claim 'may bring the action or one or more of those individuals may bring the action for the benefit of all.'").

Because a wrongful death suit must "be prosecuted for the benefit of all who are so entitled under it[,]" statutory beneficiaries are not necessary parties to the suit. *Coffey*, 2016 WL 5349792, at *2 (citing *Morin v. Ford Motor Co.*, No. 3:07-cv-1700-L, 2009 WL 2486027, at *2 (N.D. Tex. 2009) (citation omitted)). Moreover, because Hostetter's wrongful death claim was filed more than three months after Decedent's death, Hostetter, as administratrix, "is the only person entitled to bring and prosecute this wrongful death action[.]" *Morin*, 2009 WL 2486027, at *2 (citing Tex. Civ. Prac. & Rem. Code § 71.004(c)). No Defendant has disputed that Hostetter, in her capacity as the administratrix of the Estate, brings the instant wrongful death claim for the benefit of all statutory beneficiaries or asserted that Hostetter has otherwise failed to state a claim under this statute. Accordingly, the undersigned RECOMMENDS that Gillock's Motion (ECF No. 31) be DENIED and the City of Nocona's Motion (ECF No. 33) be DENIED to the extent it seeks dismissal of Hostetter's wrongful death claim against Gillock.

### B. Claims against the City of Nocona

In order to meet the Rule 12(b)(6) standard with respect to municipal liability, Hostetter must allege: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). Hostetter has not done so. Her claims fail at the outset of the *Monell* analysis because Hostetter has not identified an "official custom or policy" with specific facts showing the existence of such a custom. *Spiller v. City of Texas City,*

*Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). Hostetter notes in her Response that the City of Nocona's failure to check Gillock's prior employment history "is likely not a one-time occurrence, and is indicative of a general practice of 'cutting corners' when it comes to hiring peace officers." ECF No. 47 at 7. Even accepted as true, Hostetter has alleged only a single incident in which the City of Nocona failed to "conduct[] its due diligence[.]" ECF No. 47 at 6. Hostetter does not specifically allege an "actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority[,]"*Valle*, 613 F.3d at 542 (citation omitted), or "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).

Hostetter alleges that "Defendant Nocona's policy or custom of failing to properly vet its prospective peace officers, and the policymaker's decision to continuously rehire Defendant Gillock and/or retain him, is directly linked to Decedent's death demonstrating the City's deliberate indifference for the protection of its citizens['] civil rights including Decedent's civil rights." ECF No. 28 at 8. Such allegations do not contain specific facts showing the existence of any policy or custom. Instead, Hostetter merely states that the City of Nocona's liability is based on a decision to hire Gillock without conducting a background investigation. Accordingly, Hostetter does "not plausibly allege that [the City of Nocona] hired any other employee with a similar record in a similar manner, or that it had a policy or custom of doing so." *Arevalo*, 2017 WL 1153230, at *11. Although Hostetter attempts to invoke single incident liability in her Response, Hostetter has not sufficiently pleaded this "extremely narrow" exception. *Valle*, 613 F.3d at 542 (citing *Bolton*, 541 F.3d at 548 (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.

2005))); ECF No. 47 at 7. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Hostetter's allegations against the City of Nocona are similarly deficient with respect to her claim that "Defendant Nocona was deliberately indifferent by failing to adequately train and/or supervise Defendant Gillock." ECF No. 28 at 12. "The standard applicable to a failure-to-train claim is the same as the standard for municipal liability." *Valle*, 613 F.3d at 544 (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). "A plaintiff must show that (1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Id.* (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Pineda v. City of Houston*, 291 F.3d 325, 331 (5th Cir. 2002)).

> To state a claim against a municipality under § 1983 that will not be dismissed under Rule 12(b)(6), an individual plaintiff can provide fair notice by *inter alia* describ[ing] (1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; or (4) the specific topic of the challenged policy or training inadequacy. . . . Those types of details, together with any elaboration possible, help to (1) satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests, and (2) permits the court to infer more than the mere possibility of misconduct.

*Parker v. Missouri City, Tex.*, No. 4:12-CV-2484, 2015 WL 4431019, at *6 (S.D. Tex. July 17, 2015) (internal quotations and citations omitted).

Hostetter again has failed to sufficiently plead the first element, that "a training policy or procedure was inadequate[,]" because she has failed to allege even the existence of an allegedly inadequate training policy or procedure. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170

(5th Cir. 2010) (quoting *Roberts*, 397 F.3d at 293) ("In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective.") (internal quotations omitted); *see* ECF No. 28 at 10-11. Hostetter repeats her factual assertions and submit that "Defendant Gillock's behavior is one of an untrained, ill-trained, and/or unsupervised peace officer." *Id.* Based on Hostetter's allegations with respect to the City of Nocona, the undersigned cannot "draw the reasonable inference that there was a widespread practice that was so common and well-settled as to constitute a custom that fairly represented municipal policy." *Arevalo*, 2017 WL 1153230, at *11.

Although Hostetter rests her claims against the City of Nocona on the decision to hire Gillock and the subsequent failure to train, the allegations with respect to these claims do not invoke the rare single incident exception that courts routinely decline to expand. *E.g.*, *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 385 (5th Cir. 2005) (citation omitted) ("The single incident exception, however, is a narrow one, and one that we have been reluctant to expand."); *Roberts*, 397 F.3d at 295 ("[The Fifth Circuit], in conformity with the Supreme Court's jurisprudence, has been highly reluctant to permit [the single incident] exception to swallow the rule that forbids mere *respondeat superior* liability."); *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003) (citations omitted) ("We later observed that we found liability in *Brown* for a single incident when the county 'failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness,' while also noting that 'there is a difference between a complete failure to train, as in [*Brown v. Bryan County*], and a failure to train in one limited area.'"). Summarily, Hostetter has not alleged a claim upon which relief can be granted against the City of Nocona. Accordingly, the undersigned RECOMMENDS that the City of Nocona's Motion to Dismiss (ECF No. 33) be GRANTED as to Hostetter's 42 U.S.C. § 1983

claims against the City and that all of Hostetter's claims against the City of Nocona be DISMISSED with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Judge O'Connor DENY Defendant Gillock's Motion to Dismiss (ECF No. 30), GRANT in part and DENY in part Defendant the City of Nocona's Motion to Dismiss (ECF No. 33), and DISMISS with prejudice Hostetter's claims against the City of Nocona.

A copy of this findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

Signed May 2, 2017.

*Hal R. Ray, Jr.*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE